**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IBANEZ-MUNDO, | ) |
| | ) |
| Petitioner, | ) |
| | )   3:26-cv-00746 |
| v. | ) |
| | ) |
| ODDO et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |

**MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING BOND HEARING**

Pending before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus. (ECF No. 3). Petitioner, a citizen of Venezuela, is currently detained at Moshannon Valley Processing Center. He entered the United States in or around 2022 and has remained in the country since that time on parole status. He asserts that while present in the United States, he has never been convicted of a crime and has led a stable life in the communities in which he has been present. Respondents do not appear to contest those assertions. Nevertheless, Petitioner was arrested and detained by federal immigration agents on or around January 27, 2026.

Those Immigration and Customs Enforcement ("ICE") agents and the local police officer who detained Petitioner asserted that he was unlawfully present in the United States. Respondents rely upon 8 U.S.C. § 1225(b)(2)(A) to support that detention, treating it as mandatory and without recourse to review by an immigration officer at the time of detention or later by an Immigration Judge. (ECF No. 9, at 2). Petitioner disagrees, and argues his continued detention violates both statutory law and the Constitution. Both parties submitted supplemental briefing. (ECF Nos. 11, 14, 24). The Court heard Oral Argument on June 4, 2026. (ECF No. 23).

1

The Petitioner advances an array of arguments as to why, for reasons both specific to his case and others more broadly applicable to the larger immigration law landscape, his detention is contrary to law and to the Constitution. He claims that the proper remedy is his immediate release from custody by order of this Court. Because the Petition and the response to it by the Respondents comprise several analytical layers, the Court will assess and address them in the following order.

First the Court will explain why Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a) rather than mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Second, the Court will address why ordering a bond hearing, as opposed to ordering immediate release, is the correct remedy at the moment as to someone like the Petitioner, who has been detained under Section 1225 in circumstances in which the provisions of that statute do not apply. Finally, the Court will explain why it will not now hold that the entire Immigration Judge system has been so undermined by systematic pressures such that any yet-to-occur bond hearing held before one of its yet-to-be identified Immigration Judges will necessarily not comply with the constitutional guarantee of Due Process.

Petitioner asserts that he is — at most — subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) and not mandatory detention under Section 1225(b)(2)(A). The Court agrees. Section 1226(a) applies to aliens who are "already present in the United States[,]" *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), while the mandatory detention provision of Section 1225(b)(2)(A) addresses detention of "applicants for admission" to the United States. *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *2 (D.N.J. Oct. 22, 2025). Petitioner was already present in the United States at the time of his detention, having then resided within the interior of the United States for several years, and was not intercepted and detained either at a port of entry or at the border.

Although our Court of Appeals has yet to weigh in on this issue,[1] this Court joins the United States Courts of Appeals for the Second, Sixth, Tenth and Eleventh Circuits, and the overwhelming majority of district courts — numbering at least 350 — in holding that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to aliens similarly situated to Petitioner, who are not seeking admission at a port of entry but rather are already present in the country. *See Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Fidencio Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258 (11th Cir. 2026); *Santillan Quiroz v. Mullin*, No. 26-6019 (10th Cir. June 30, 2026); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 506-14 (S.D.N.Y. 2025) (collecting 350 cases). The Court's conclusion also aligns with the reasoning of Judge Lee of the United States Court of Appeals for the Seventh Circuit in the lead Opinion for that Court in *Castanon Nava v. DHS*, 175 F.4th 828, (7th Cir. 2026). This Court concludes that those decisions supply the appropriate legal rule as to this issue in the context of this matter, as opposed to the decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the cases relied upon by the Respondents.

This Court would also note that based on recent filings by the United States on behalf of similarly situated respondents in other cases before this and other members of this Court, the United States has acknowledged on the record that the position that this Court takes as to this issue is in alignment with the views of every other United States District Judge of this Court who has considered and ruled upon the issue. *See* Response (ECF No. 8) at 3-4, *Nimamac v. Warden*, No. 26-cv-1292, (W.D. Pa. July 13, 2026).

---

[1] On May 11, 2026, our Court of Appeals heard argument in *Morocho v. Warden Phila. FDC, et al*, No. 26-1150/26-1454, which appears to squarely present this issue. That decision remains pending.

Ordinarily where a petitioner's detention is governed by Section 1226(a) but they have been improperly detained under Section 1225(b)(2)(A), the Court orders a prompt bond hearing before an Immigration Judge who will determine if that petitioner poses either a danger to the community or a risk of flight justifying continued detention without bond. This is the process that would have unfolded under the discretionary detention provision in Section 1226(a) had it been applied by the immigration authorities in the first instance, is the path this Court foreshadowed in its Case Management Order in this case, (ECF No. 5), and is the path that the Court has followed in numerous other similar cases.

Petitioner argues that the proper remedy in his case is not such a bond hearing, but instead his immediate release from custody. He advances two core arguments supporting this position. First, he argues that he has already suffered a Due Process violation that can only be remedied by immediate release, because an immigration official did not perform an initial custody determination in his case either at the moment he was most recently taken into custody, or shortly after the fact. Second, he argues that a bond hearing in front of any Immigration Judge in his case is a constitutionally inadequate remedy due to alleged systematic pressures on Immigration Judges to deny bond to detained immigrants regardless of the facts or circumstances of their situation, the applicable law, or even the constitutional command for the application of Due Process

First, Petitioner reads 8 U.S.C. § 1226(a) as mandating an initial custody review, allowing an immigration official to order release even prior to a hearing before an Immigration Judge if, in that official's judgment, a detainee is not a danger to the community or a flight risk. *See Miranda v. Garland*, 34 F.4th 338, 346-47 (4th Cir. 2022). Petitioner argues that because Respondents erroneously claimed that he was detained under 8 U.S.C. § 1225(b)(2)(A), no such initial review

was conducted, because the detaining officials believed his detention mandatory under that statute and thus never considered his release.

Then, relying on the reasoning of the decision in *Chipantiza-Sisalema v. Francis*, No. 25-Civ-5528 (AT), 2025 WL 1927931 (S.D.N.Y. July 13, 2025), Petitioner argues that the proper next step when there is such a deprivation is immediate release. According to him, the entirety of his detention to date has been unlawful because there was no initial custody review, and a *post-hoc* assessment of the validity of his detention by an Immigration Judge cannot rewind the clock to the moment of first detention and therefore, he may not now be detained further at all, even pending a prompt hearing before an Immigration Judge.

 It is not disputed that Petitioner could have been properly detained initially under Section 1226(a) so long as he received a constitutionally-compliant administrative custody determination along with the follow along opportunity to challenge any resulting detention before an Immigration Judge. *See* 8 U.S.C. § 1226(a). And in the Court's judgment, the presumptive remedy given the state of the law in our Circuit for a constitutional challenge to continued detention erroneously invoked under Section 1225(b)(2)(A) is a bond hearing held before an Immigration Judge. *See Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020). Petitioner's arguments do not convince the Court that this presumptive remedy should not apply in his case, at least not at the moment. Here's why.

An adversarial proceeding before a judge (even a non-Article III Immigration Judge) ordinarily protects Due Process rights as a structural matter more effectively than an administrative determination made in a non-adversarial setting would. And the lack of an initial review would have no substantive impact on the outcome of such further proceedings before an Immigration Judge, given that counsel for Petitioner advised the Court (without contest) at Oral Argument in

this case that any such hearing is *de novo*, and the initial administrative custody determination by an immigration official does not constrain or steer the subsequent decisions of an Immigration Judge. In short, the Petitioner has not shown that the interests protected by such an administrative decision could not now be secured by a prompt adjudication before an Immigration Judge.

In *Chipantiza-Sisalema*, immigration officials actually invoked the discretionary detention provision in 8 U.S.C. § 1226(a) but failed to provide for the immediate assessment of detention by an immigration officer. 2025 WL 1927931, at *3. Petitioner's case is distinguishable. Here, the immigration officials at the time of initial detention were relying instead on 8 U.S.C. § 1225(b)(2)(A), which imposes mandatory detention. Thus, while the lack of an initial custody determination in *Chipantiza-Sisalema* was in direct violation of the very statutory authority immigration officials relied on that case, here immigration officials were operating on a statutory premise in which such a determination was not required. And while this Court concludes that the Government's position that Section 1225(b)(2)(A) applies here is legally erroneous for the reasons noted above, it was not at the time of detention facially unreasonable for the immigration authorities to initially rely on Section 1225(b)(2)(A) for the Petitioner's detention, given that two Courts of Appeals have agreed with that legal position, and it is an issue that currently remains an open question at the Court of Appeals in our Circuit.

The Court notes, however, that this has become (and daily is becoming) a much closer call given that the tide across the circuit and district courts is now flowing against the position taken by the Respondents. And as noted above, even the United States in its more recent filings in this District in like cases has recognized that every single District Judge of this Court has come out contrary to the position of the Respondents on this issue. Indeed, even in at least one Circuit that has agreed with the position advanced by Respondents here — that Section 1225(b)(2)(A) supports

mandatory detention for those in circumstances similar to Petitioner — there has been a recognition that such detention cannot be essentially open-ended and perpetual without violating Due Process and some review of the necessity of that detention by an Immigration Judge must occur. *See Rodriguez v. Ortega*, No. 26-50183 (5th Cir. July 2, 2026) (holding that Due Process requires a bond hearing be held after 90 days even when detention is pursuant to Section 1225(b)(2)(A)).[2]

Applying the correct statutory provision, the Court ordering that Petitioner now receive a prompt hearing before an Immigration Judge treats the alleged initial failure to provide an administrative review of detention status as tantamount to an effective denial of release on bond. The subsequent *de novo* consideration of the matter by such an Immigration Judge is the natural next stage for detentions made under Section 1226(a).

Thus, while the Petitioner may be correct that his rights were impaired by the lack of an initial assessment, the Court does not conclude that a prompt Immigration Judge hearing — which otherwise would be required under application of the correct statutory provision — falls short as a remedial matter. Given the current split in authority as to the Section 1225 versus 1226 issue, this Court does not conclude that it is necessary to order the release (temporary as it might turn out to be) of the Petitioner in this specific case pending a bond hearing as a form of prophylactic remedy; that is a remedy not strictly required by existing law but imposed to deter future governmental misconduct. As things now stand, this is a rapidly developing area of law where there is no controlling Circuit authority, and at least some level of divergence among the regional courts of appeals.

---

[2] On July 10, 2026, the Fifth Circuit granted a petition for rehearing before the full Court in that case, and on July 21, 2026 the Fifth Circuit stayed orders entered by lower courts pursuant to this decision releasing individuals detained under Section 1225(b)(2)(A) who had been in detention for longer than 90 days.

Generally, when confronted with allegations that a person is being illegally detained by the Government, the appropriate course of action is to get that person and their custodian before a judge for an individualized hearing. Given the current state of the law as outlined above, this Court ordering that Petitioner receive a prompt bond hearing in front of an Immigration Judge is the best applicable remedy for the conduct involved in this case.

Petitioner points out that some district courts both in this Circuit and across the country have ordered immediate release upon a determination that a detainee was improperly held under Section 1225(b)(2)(A) rather than Section 1226(a). *See, e.g.*, *Bueno v. O'Neill*, No. 26-304, 2026 U.S. Dist. LEXIS 30079, (E.D. Pa. Feb. 13, 2026); *Centeno v. Lowe*, No. 25cv2518, 2026 U.S. Dist. LEXIS 6654, (M.D. Pa. Jan. 13, 2026); *Hyppolite v. Noem*, 8-8 F. Supp. 3d 474 (E.D.N.Y. 2025); *Lepe v. Andrews*, 801 F. Supp. 3d 1104 (E.D. Cal. 2025). But even these cases acknowledge that while a habeas court has "the power to order the conditional release of an individual unlawfully detained [] release need not be the exclusive remedy and is not the appropriate one in every case." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

And in a number of these cases, such release was neither unlimited nor unconditional, but instead came with a directive that such judicially ordered release was for a relatively short and finite period of time, after which the detainee may be re-detained under the processes attendant to Section 1226(a), taking the process in those cases to the same procedural finish line as would ordering a bond hearing here. *See, e.g.*, *Sharapov v. O'Neill*, No. 26-38, 2026 U.S. Dist. LEXIS 10168 (E.D. Pa. Jan. 20, 2026) (temporarily enjoining re-detention for seven days); *Lopez v. Soto*, No. 26-2826, 2026 U.S. Dist. LEXIS 69007 (D.N.J. Mar. 31, 2026) (temporarily enjoining re-detention for fourteen days); *Salinas v. Lowe*, No. 26-974, 2026 U.S. Dist. LEXIS 114868 (M.D.

8

Pa. May 26, 2026) (temporarily enjoining re-detention for fourteen days); *Rivero v. Mina*, 817 F. Supp. 3d 1278 (M.D. Fla. 2026) (temporarily enjoining re-detention for seven days).

Next, Petitioner alternatively argues that immediate release is the proper course here because a bond hearing in front of an Immigration Judge is constitutionally inadequate due to alleged systematic pressures on Immigration Judges to deny bond to detained immigrants regardless of the facts or circumstances of their situation, the applicable law, or even the constitutional command for the application of Due Process. Implicit in his argument is that such pressures would inevitably work to prevent his receipt of a constitutionally-compliant bond hearing here. He attaches a number of exhibits to his Amended Petition as support for this argument.

His supporting exhibits include declarations from former immigration officials (including a former Immigration Judge) and from experienced immigration lawyers reporting on their personal observations of certain immigration proceedings, particularly those involving certain Immigration Judges from the Immigration Judges' office in Annandale, Virginia. (ECF Nos. 3-4, 3-5). These declarations are buttressed by reports about such proceedings elsewhere that the declarants have received from others, and published reports in public sources regarding the Executive Branch's dismissal and replacement of over one hundred Immigration Judges. (ECF No. 3-6).

Petitioner also focuses on the Executive Branch's recent use of the term "deportation judge" to describe federal Immigration Judges on official government websites. He argues that this implies that those judges are increasingly encouraged to prioritize the political goals of the current Administration rather than to uphold their duty to fully and fairly adjudicate each matter

before them with no predetermined outcome and only after proper notice and opportunity to be heard, all in accordance with the law and the Constitution. (ECF No. 3-6).

Finally, the Petitioner presents news reports claiming that, when examining the past 18 years or so, the rate of grants of *asylum* have now dropped to below 10% from prior grant rates ranging from approximately 22% to 50+%, seemingly depending on the Administration then in charge of the immigration system. (ECF No. 3-6). From this numerical information, the Petitioner seeks to have the Court infer two things — that *bond* grants in the circumstances present here will similarly drop precipitously and that they will do so because of improper pressure on Immigration Judges to deny bond requests. Therefore, says the Petitioner, it is inevitable that any hearing he receives before an Immigration Judge will not comply with the Constitution.

Petitioner's arguments on this point have been echoed by the submission of the ACLU as *amicus*. (ECF No. 22). The submitted *amicus* brief and its referenced supporting materials assert that since 2025, grants of bond by Immigration Judges for individuals detained within the Third Circuit have dropped from 46.2% to around 22%, in circumstances which *amicus* posits generate the inference that the entire Immigration Judge hearing process currently does not comport with Due Process. (ECF No. 22 at 14-17).

As both a procedural and substantive matter, the Court concludes that on the current record in this specific case, it would be improvident to effectively declare the entire federal Immigration Judge system to violate the Constitution in each and every case now and yet to come, which is the natural and probable consequence of this second basis for the relief sought by the Petitioner and advanced by *amicus*. The Court reaches that conclusion for two reasons.

First, what is not currently before the Court is demonstrated legal authority for it to order such relief in this proceeding. Petitioner does not present authority for this District Court to grant

10

such a broadly applicable determination in the context of this individual habeas proceeding, especially one in which no hearing before an Immigration Judge has yet occurred. *See Trump v. CASA*, 606 U.S. 831, 841 (2025). Additionally, while this Court has not received briefing or argument on the matter and therefore expresses no judgment about it, the Court would be remiss if it did not at least flag the potential impact on the remedial authority of this Court arising from the Third Circuit's recent holding that the district courts lack jurisdiction to consider certain challenges to immigration decisions that can later be meaningfully reviewed in a petition for review from the Board of Immigration Appeals. *See Khalil v. President of the United States*, 164 F.4th 259, 274-77 (3d Cir. 2026) (per curiam).

Second, the record before the Court is insufficient to conclude as a matter of law that the entire Immigration Judge system is compromised as an adjudicatory body. As Petitioner's counsel acknowledged during oral argument, his position is that the cumulative effect of the documentary materials advanced by the Petitioner and *amicus* is the creation of an inference: that the Executive Branch is generating unconstitutional conduct by Immigration Judges so egregious that it nullifies the validity of the Immigration Judge/detention review and decision process entirely and as to all cases, even those like the Petitioner's in which no Immigration Judge hearing has yet occurred.

To be sure, the Petitioner backs up his report of "smoke" of systemic constitutional violations with some evidence of "fire." The broad allegations of the Amended Petition and the assertions made in the affidavits of immigration attorneys and former immigration officials attached to the Petition are jarring when considered in the context of the fundamental tenets of Due Process, tenets long recognized by the Supreme Court as being applicable to persons such as the Petitioner in his circumstances. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). And the inferences of those allegations that the Petitioner and *amicus* ask the Court to draw and treat as conclusive, if

11

proven, would represent a fundamental departure from the core principles that are implicated any time any person is held in custody by force of law, as Petitioner is now.

Petitioner argues there is more — that the reported personal experiences and observations in the submitted declarations of legal professionals personally familiar with the arc of immigration hearings over time are not all that there is. He points to allegedly ill-disguised public directives from the upper echelons of the Executive Branch instructing that bond for those in the Petitioner's position should be rare, and that the proof of the pudding in what he asserts is a sharp drop in *asylum* grants by Immigration Judges occurring at the same time the Executive Branch was in the process of firing about 15% of all Immigration Judges while also hiring numerous people to fill the position of what are now labeled as "deportation judges." (ECF No. 3-6).

And *amicus* claims there is even more — pointing to data showing a decline in the grant of bond by Immigration Judges as to detainees in this Circuit over a recent interval, an interval which according to *amicus* should have seen an increase in those grants of bond. But that numerical information, while broadly supportive of the argument *amicus* advances, is not as conclusive as *amicus* suggests. For one thing, it presumes that any greater prior rate for the grant of bond was the "correct" rate based on the individual records then before the involved Immigration Judges in those cases, from which it is implied both that the "grant rate" currently is therefore incorrect on the law and the facts of the cases from which that data is derived, and that the reasons for that result are as nefarious as is argued.

But an inference of wholesale unlawful conduct that is based on statistical information generally requires evidence and analysis that goes beyond the consideration of raw numbers and requires a mode of proof that has demonstrably controlled for all of the requisite and relevant variables and factors that are ordinarily part and parcel of a data-based statistical proof argument.

12

And while arguments as to why the result *amicus* posits from that raw numerical information may turn out to be facially plausible, those arguments are at this point just that — arguments — not backed up by the level of statistical analysis and precision that ordinarily underlies a judicial determination that the relevant data in and of itself generates a statistically derived inference of legal culpability for unconstitutional conduct. *See Meditz v. City of Newark*, 658 F. 3d 364, 370-74 (3d Cir. 2011).

The necessary result of the Court making such a finding and reaching such a conclusion would be the judicial determination that the adjudicatory judgment of every one of the Immigration Judges employed in the United States has been so captured (in advance) by unlawful systemic pressures from and within the Executive Branch that any bond hearing held or to be held before any of them in this case or any other would be constitutionally violative before it even happens. The record before this Court, based as it is on a combination of anecdotal observations involving a relatively modest subset of Immigration Judge hearings combined with raw numerical information that does not include the level of statistical analysis necessary to itself generate an inference of unlawful conduct, does not support that far-reaching conclusion.

The Petitioner is plainly entitled to a prompt bond hearing before an Immigration Judge, fully and fairly conducted in accordance with applicable law and the Constitution. Such will be ordered. Further, given that the Respondents are now on record notice that the Petitioner is represented by multiple counsel, Petitioner must be afforded full and fair notice of the proceedings, a full and fair opportunity to be heard personally and by his legal counsel and to present evidence and testimony on relevant matters, taking into account the circumstances of the involvement of such counsel.[3] Should such not occur, all parties to this proceeding, including the Respondents and

---

[3] Petitioner has requested that due to his counsel's current residence in West Virginia, his counsel receive 72 hours' notice of any scheduled hearing for which counsel's attendance would ordinarily be required or alternatively that his

their counsel, would be well aware that challenges to the conduct of such proceedings would likely follow as night follows day, with such asserted flaws being placed front and center before the Court.

The Court also declines the Petitioner's invitation to conduct such a bond hearing itself, particularly in the absence of legal authority for it to essentially step into the shoes of an Immigration Judge, and certainly at least not without some firm basis to conclude that *any* Immigration Judge who would conduct the bond hearing required by this Order cannot or would not do so in accord with the law.

A final word: this is a rapidly evolving area of the law nationally, within our Circuit and within this District. This Court's reasoning and decision in this case is just that, a decision in this case on this record at this moment in time given the current state of the law in this Circuit and across the district courts in it. This Court's judgment in future cases (and in future proceedings as may occur in this case) will be informed and shaped by the facts then before it and the reasoning of decisions yet to come, including any direction from the Supreme Court or our Court of Appeals, and of course, the persuasive decisions of colleagues in this Court and other district courts.

AND NOW, this 23rd day of July 2026, IT IS HEREBY ORDERED that Petitioner's Amended Petition for Writ of Habeas Corpus, (ECF No. 3), is GRANTED IN PART and DENIED IN PART.  It is GRANTED in that Petitioner must receive an individualized bond hearing before a neutral immigration judge pursuant to 8 U.S.C. § 1226(a). Such hearing shall occur as promptly as it practicable, and in no event more than fourteen (14) days from the date of this Order. Within seven (7) days thereafter, the Respondents shall provide notice to the Court in a filing on the docket

---

counsel be allowed to appear at such a hearing remotely. (ECF No. 14 at 10 n. 9). Abiding by such requests strikes the Court as being readily manageable by the immigration authorities, and consistent with the commands of Due Process.

of the outcome of the bond hearing. If Petitioner is released as a result of the aforementioned individualized bond hearing or otherwise, Respondents are further ORDERED to return to Petitioner any and all funds or property which may have been seized from him at the time of his arrest or which are otherwise in their custody.

All other requests for relief in the petition are otherwise DENIED WITHOUT PREJUDICE to the extent Petitioner seeks any additional relief at this time. The Court retains jurisdiction over the action and the parties pending further proceedings. The Court would also note that should bond not be granted by an Immigration Judge, and should Petitioner then contend in this Court that the proceedings were so fundamentally unfair as to violate Due Process, Petitioner will be responsible for providing the Court with a transcript of the proceedings held before the Immigration Judge he is challenging.

Subject to being reopened as may be necessitated by further events, the Clerk will mark the case CLOSED without prejudice on the docket, the Court retains jurisdiction of the action and the parties for the conduct of further proceedings as may be appropriate, including enforcement of its Orders.

/s/ Mark R. Hornak
Mark R. Hornak
UNITED STATES DISTRICT JUDGE

Dated: July 23, 2026

15